UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NATIVIDAD SANCHEZ,

                              Plaintiff          DECISION AND ORDER

-vs-                                             07-CV-6502 CJS

TRAVELERS COMPANIES, INC., ST. PAUL
FIRE AND CASUALTY COMPANY, ST. PAUL
FIRE AND MARINE INSURANCE COMPANY,

                              Defendants
_____

APPEARANCES

For Plaintiff:          Timothy C. Bellavia, Esq.
                        The Parisi Law Firm
                        16 West Main Street, Suite 736
                        Rochester, New York 14604

For Defendant:          Judith Treger Shelton, Esq.
                        Rodger P. Doyle, Jr.
                        Troy S. Flascher, Esq.
                        Kenney, Shelton, Liptak & Nowak, LLP
                        Suite 510, Rand Building
                        14 Lafayette Square
                        Buffalo, New York 14203

INTRODUCTION

This is a diversity action to recover insurance benefits under a Supplemental

Uninsured/Underinsured Motorist ("SUM") automobile policy issued by Defendants.  Now

before the Court are the following applications: 1) Plaintiff's motion for partial summary

judgment (Docket No. [#27]); 2) Defendants' cross-motion for partial summary judgment

(Docket No. [#33]); and 3) Plaintiff's cross-motion for partial summary judgment (Docket No.

[#35]).  For the reasons that follow, Plaintiff's applications [##27,35] are granted, and Defendant's application [#33] is granted in part and denied in part.

BACKGROUND

On March 3, 2003, Plaintiff was driving an automobile, belonging to her employer and insured by Defendants, in the outside lane of an undivided four-lane highway. At that time, James Jackson ("Jackson"), the driver of another vehicle traveling in the same direction, failed to observe Plaintiff's automobile traveling beside him, and attempted an illegal right-hand turn from the inside lane, striking Plaintiff's car and causing her to crash into the curb on the opposite side of the highway.  In a subsequent action against Jackson in New York State Supreme Court, Plaintiff was granted summary judgment against Jackson as to liability.

Plaintiff, a single mother of two young children, was employed as a medical case worker.  In that capacity, Plaintiff traveled by car to meet with clients, and she spent most of her working day driving.  Plaintiff was also required to perform some lifting, such as lifting clients' groceries.  Immediately following the accident, Plaintiff missed eleven days of work, due to back pain.  After eleven days, Plaintiff returned to work, with a doctor's restriction on her ability to lift.  Due to low back pain, Plaintiff also had difficulty standing or sitting for more than a few minutes at a time.  Consequently, Plaintiff adjusted her work activities, in that she traveled less, and had clients meet her at her office when possible.[1]  Since the accident, Plaintiff also has been unable to perform household chores, including laundry, vacuuming, and washing dishes.

---

[1]Plaintiff continued to work until 2006.

On May 29, 2003, Robert D. Schrock, Jr.,M.D. ("Schrock"), an othopedic specialist, examined Plaintiff and reported "moderate paraspinal muscle spasms" and "sore[ness] to palpation over the right sacroiliac joint." (Docket No. [#35-12] at 3). Schrock's diagnosis was "acute low back strain secondary to motor vehicle accident 03/10/2003." *Id*. Subsequently, on July 10, 2003, Schrock reported "marked paraspinal muscle spasm" and "mildly positive" straight leg test. *Id*. at 4.

On August 18, 2003, MRI testing indicated "multilevel disease with loss of disc height and disc signal, from the L2-3 disc space caudally with disc/osteophyte complexes, multilevel advanced facet arthropathy and central canal stenosis dominant at L3-4 and encroachment at multiple levels secondary to the facet arthropathy and disc/osteophyte complexes." (Docket No. [#35-6] at 30).

On August 28, 2003, Schrock stated, in relevant part: "On physical examination, patient has marked paraspinal muscle spasm, lumbar spinal range of motion is markedly limited. . . . The MRI of the lumbar spine shows as I expected severe central canal stenosis at L3-L4. There is multiple disease up and down the canal. . . . The patient was completely asymptomatic before her injury of 03/10/2003.[2] Now, she is profoundly symptomatic." (Docket No. [#35-12] at 5).

On October 30, 2003, Schrock wrote: "The patient has marked paraspinal muscle spasm today. . . . [S]he is clearly getting worse. I see no choice but to take her out of work. . . . She is working. I think that she should stop working. I am making her totally disabled

---

[2]The record indicates that Plaintiff had complaints of back pain in 1979 and 1996. Dr. Cameron Huckell, an orthopedic specialist, testified that in his opinion, those complaints were not related to Plaintiff's complaints following her accident on March 10, 2003. (Docket No. [#35-13] at 6-11). In any event, Plaintiff testified that she was not experiencing back pain immediately prior to March 10, 2003, and there is no evidence to the contrary. (Docket No. [#37-4], Plaintiff's Deposition at 12-13).

from work on 11/04/03. I expect her to return to work on January 4, 2004." *Id*. at 6. On December 18, 2003, Schrock noted that Plaintiff was still working, and that she had an epidural steriod injection, which was helpful. *Id*. at 7.

On February 25, 2004, Peter N.Capicotto, M.D. ("Capicotto"), examined Plaintiff and reviewed x-ray and MRI testing results. Capicotto's impression was "low back pain, sciatica secondary to lumbar disk herniation at L3-4 and degenerative spondylolisthesis with stenosis at L4-5." (Docket No. [#37-7] at 8). Capicotto further stated, "I do believe the back pain and the sciatica secondary to her disk herniation and L4-5 stenosis has become symptomatic and the root cause being her [March 10, 2003] injury at work." *Id*. at 9.

On August 5, 2005, Clifford Ameduri, M.D. ("Ameduri"), a neurologist, examined Plaintiff, who was continuing to complain of back pain, radiating into her buttocks and left thigh. Upon examination, Ameduri reported a positive Minor's sign, positive straight leg raising test, and loss of normal lordotic curve. (Docket No. [#35-7] at 8).

On May 4, 2006, Richard Byrne, M.D. ("Byrne"), conducted an orthopedic evaluation for PMA Insurance. (Docket No. [#37-7] at 18). Byrne noted that Plaintiff was reportedly working, with restrictions. *Id*. at 19. Straight leg raising was "negative to 90 degrees bilaterally." *Id*. at 20. Byrne's diagnoses were "lumbosacral strain, resolved," "multilevel lumbar degenerative disc disease with multilevel spondylosis and spinal stenosis, pre-existing," and "*aggravation of diagnosis #2 [multilevel lumbar degenerative disc disease] previously present but asymptomatic*." *Id*. at 21 (emphasis added).[3] Byrne further stated

---

[3]The Court believes that the plain meaning of Byrne's statements in this regard is that, although Plaintiff's "lumbosacral strain" was "resolved," her "degenerative disc disease" was nevertheless symptomatic, as a result of being aggravated by the accident, whereas it had previously not been symptomatic. In other words, although Byrne attributed Plaintiff's continuing pain to her degenerative disease, as opposed to the strain caused by the accident, he indicated that the degenerative disease had been asymptomatic prior to the

that Plaintiff had not reached maximum medical improvement, and that she was "currently functioning at a level of temporary moderate partial disability." *Id*. at 21. Byrne further stated, with regard to Plaintiff's employment, that she should avoid lifting and repetitive bending, and be allowed to "change positions frequently as needed." *Id*.

On August 1, 2006, Darrick J. Alaimo, M.D. ("Alaimo"), a physician board certified in neurology and electromyography, performed neuromuscular and EMG testing. Left straight leg raising test produced "severe pain in the lower back at 30 degrees." (Docket No. [#37-7] at 16). Alaimo's impression was "left lumbosacral radiculopathy" and "lumbar spondylosis." *Id*. at 17.

On November 17, 2006, Ameduri performed a "comprehensive" evaluation and noted the following: 1) Plaintiff complained of lower back pain, radiating into her buttocks; 2) the pain waxed and waned, but was generally continuous; 3) Plaintiff was taking Vicodin, Tramadol, Naproxen, and Tylenol for pain; 4) Minor's sign was positive with back pain; 5) positive straight leg test; 6) loss of normal lordotic curve; 7) significant bilateral paraspinal spasm; 8) "extreme pain in any extension"; 9) "lack of truncal mobility; 10) "there has been a failure of treatment plan". (Docket No. [#35-7] at 15).

On December 26, 2006, Ameduri observed, "the patient has a very limited range of motion. She can only do 15 to 20 degrees of flexion, almost 0 degrees of extension." *Id*. at 17.

On September 25, 2007, Ameduri examined Plaintiff and reported, "the patient is unable to stand erect . . . The patient continues on with significant paraspinal spasm in the

---

accident.

deep paraspinal muscles bilaterally at L4, L5, and S1, left greater than the right. . . . The patient's range of motion is virtually 0 in the lumbosacral spine. Straight leg raising is positive, but again very difficult to assess due to the patient's inability to sit in a more comfortable position." *Id*. at 36. On December 11, 2008, Ameduri examined Plaintiff and reported essentially the same findings. *Id*. at 64.

On or about September 17, 2007, Plaintiff commenced this action. Subsequently, the parties conducted discovery.

On November 20, 2008, Patrick J. Hughes, M.D. ("Hughes"), a non-treating, independent medical examiner retained by Defendant, examined Plaintiff. Hughes also reviewed Plaintiff's medical records, and in the report he prepared, he included an exhaustive recitation of Plaintiff's medical records for years covering 1968 through August 2008. Hughes noted, in relevant part, the following: Plaintiff complained of low back pain in 1979; an x-ray of Plaintiff's lumbosacral spine taken in 1984 was essentially normal; a CT scan taken of Plaintiff's lower lumbar spine taken in 1985 showed a "bulging disc somewhat more on the left than right at L4-5 level"; and an x-ray in 1995 showed degenerative changes "which are most significant at L4-5 and L5-S1." Upon examination, Hughes noted that Plaintiff walked slowly with the aid of a cane, was hunched, and had an antalgic gait. Hughes stated his impressions, in relevant part, as follows:

> Ms. Sanchez has low back and left leg pain; some numbness of the buttocks and right thigh due to degenerative changes in the lumbar spine
>
> ***
>
> X-rays of the lumbosacral spine done 03/05/84 and a CT Scan of the lumbar spine done 01/11/85 show degenerative changes. X-Rays of the lumbosacral spine done 11/24/95 again show degenerative changes most significant at L4-5 and L5-S1.

> I feel that the automobile accident of 03/10/03 resulted in an acute cervical and lumbosacral strain that aggravated her prior condition.
>
> Her current condition represents pre-existing degenerative changes aggravated by the motor vehicle accident of 03/10/03.

(Hughes Report dated December 2, 2008).

On February 10, 2009, Plaintiff was examined by Cameron Huckell, M.D. ("Huckell"),

and orthopedic surgeon. Huckell noted:

> There was paravertebral muscle spasm noted on exam. She stands and walks in a partially flexed forward position.
>
> Lumbar ROM: flexion 30 °/40-60 °, extension 5 °/20-35 °, bending to right 5 °/15-20 °, bending to left 5 °/15-20 °, rotation to right 3 °/3-18 °, rotation to left 3 °/3-18 °.
>
> [Straight leg raising]: Positive in the supine position on the right at 45 and the left at 15 °.
>
>                ***
>
> It is my opinion that the work related accident is the competent and producing cause of Natividad's current spinal conditions. . . . It is my opinion that Natividad has a permanent and total disability . . . [T]here is no sedentary work in my opinion she could tolerate because of her need for narcotics and severe pain.

(Docket No. [#35-6] at 24).

On May 26, 2009, Plaintiff moved for partial summary judgment (Docket No. [#27]),

regarding the "proximate cause of the motor vehicle accident of March 10, 2003." In that

regard, Plaintiff seeks a ruling that the accident was caused solely by Jackson's negligence.

In response, Defendants contend that the Court should deny the application, since "[i]n the

present matter there are questions of fact as to whether Ms. Sanchez's alleged pain and

problems in her lower back were actually caused by the accident at issue or whether they

are the result of preexisting degenerative changes." (Affidavit of Troy Flascher, Esq. [#33-1]

at 8).

On June 25, 2009, Defendants filed their subject cross-motion for summary judgment [#33], seeking a ruling that Plaintiff's claimed injury does not meet two categories of "serious injury" set forth in New York Insurance Law § 5102(d).  Specifically, Defendants ask the Court to find that Plaintiff did not suffer either a "permanent loss of use of a body organ, member, function or system," or "a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment."

In support of the application, Defendants rely on the opinions of Hughes. (Docket Nos. [#33, 33-4, 33-5]).  In that regard, in addition to his earlier report, on June 22, 2009, Hughes executed an affidavit in which he states that "from a medical perspective," Plaintiff "did not sustain any total or permanent loss of use of any body organ, member, function or system in the March 10, 2003 motor vehicle accident.  Mr. Sanchez retains residual function, use, and capacity of her spine and its component parts."  Hughes further states that Plaintiff "did not sustain any medically determined injury which prevented her from performing substantially all of her material, usual and customary, daily activities for not less than ninety days during the one hundred eighty days following the March 2003 accident. Ms. Sanchez returned to her pre-accident occupation 11 days after the March 10, 2003 accident and continued to work until October of 2006."

In opposition, Plaintiff maintains that there are triable issues of fact as to whether she satisfies the "90/180" category, due to the aforementioned restrictions on her work activities and activities of daily living.  However, with regard to the "permanent loss of use" category,

8

during oral argument Plaintiff's counsel conceded that Plaintiff did not suffer a total loss of use of her lumbar spine.

On July 20, 2009, Plaintiff filed a cross-motion for partial summary judgment [#35], seeking a determination that she suffered a serious injury as defined in Insurance Law § 5102(d). Specifically, Plaintiff seeks a ruling that as a result of the MVA, she suffered "a permanent consequential limitation of use of a body organ or member" and a "significant limitation of use of a body function or system." Plaintiff maintains that these categories of serious injury are established, as to her lumbosacral spine, by the opinions of Dr. Huckell and Dr. Ameduri. (Docket No. [#35] at 2). For example, Plaintiff submitted an affidavit from Huckell which states, in relevant part, that his physical examinations of Plaintiff revealed the following objective findings: "Paravertebral muscle spasms" and "Restricted Lumbar Range of Motion: Flexion 30 degrees with normal being 40-60 degrees; Extension 5 degrees with normal being 20-35 degrees; Bending to both the right and left 5 degrees with normal being 15-20 degrees." (Huckell Affidavit ¶ 4).[4] Huckell further states that Plaintiff is limited

> with respect to many activities of daily life such as housework, yardwork, cooking, cleaning and any activity requiring walking more than a short distance, sitting or standing for more than a short period of time and any lifting. Such symptoms and limitations are a natural and expected medical consequence of the orthopedic injuries Ms. Sanchez suffered as a result of the March 10, 2003 motor vehicle accident.

*Id*. ¶ 6. Defendants oppose the application, based upon Hughes' opinions as described above.

---

[4]In their memo of law submitted in opposition, Defendants contend that a medical report by Jared Blank, MS PT, dated September 30, 2005, shows that Plaintiff had a full range of motion in her lumbar spine on that date. (Defendants' Statement of Facts, Exhibit F) ("ROM full"). Even assuming that Plaintiff had a full range of movement on that date, such fact is not sufficient to raise a triable issue of fact as to whether Plaintiff suffered a serious injury.

DISCUSSION

*Summary Judgment Standard*

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co*., 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249; *see also*, FED. R. CIV. P. 56(e)("When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine

issue for trial."). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

*New York Insurance Law*

In New York State, to recover non-economic loss under a SUM policy, a plaintiff must establish "serious injury," as defined in Insurance Law § 5102(d). *Raffellini v. State Farm Mut. Auto. Ins. Co.*, 9 N.Y.3d 196, 878 N.E.2d 583, 589 (2007). In that regard, Insurance Law § 5102(d) states:

> "Serious injury" means a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

Insurance Law § 5102(d). In this regard, New York's "No Fault" law, which was intended to "weed out frivolous claims and limit recovery to significant injuries," requires "objective proof of a plaintiff's injury to satisfy the statutory serious injury threshold," and "subjective complaints alone are not sufficient." *Toure v. Avis Rent A Car Systems, Inc.*, 98 N.Y.2d 345, 350, 774 N.E.2d 1197, 1199-1200 (2002). On this point, it is well settled that

> [i]n order to prove the extent or degree of physical limitation, an expert's designation of a numeric percentage of a plaintiff's loss of range of motion can be used to substantiate a claim of serious injury. An expert's qualitative assessment of a plaintiff's condition also may suffice, provided that the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function or system.

*Id*. (Citations omitted). "Objective" medical evidence, in this regard, includes things such as "MRI and CT scan tests and reports," as well as "observations of muscle spasms during . . . physical examination of [the] plaintiff." *Id*., 774 N.E.2d at 1202.

A serious injury may consist of an aggravation of a preexisting condition that was asymptomatic prior to the accident. *See, Colavito v. Steyer*, 65 A.D.3d 735, 883 N.Y.S.2d 807, 808 (3d Dept. 807) ("Defendant's experts, relying on an MRI taken shortly after the accident, opined that plaintiff's symptoms were related to a preexisting condition and, thus, were not causally related to the accident. Yet the experts failed to address any aggravation of the preexisting condition, which had reportedly been asymptomatic prior to the accident."); *see also, Mack v. Pullum*, 37 A.D.3d 1063, 829 N.Y.S.2d 774, 775-776 (4th Dept. 2007) (Defendant's summary judgment was properly denied where "plaintiff submitted the affirmation and attached medical reports and records of a physician who concluded that the degenerative changes to plaintiff's spine before the accident were asymptomatic, and that physician established the extent or degree of the alleged physical limitations resulting from those conditions that plaintiff contends were aggravated as a direct result of the accident.").

Under New York law, when moving for summary judgment on the "serious injury" requirement, a defendant has the initial burden of establishing a "prima facie case that [the] plaintiff's injuries [are] not serious;" the burden then shifts to the plaintiff, "to come forward

with sufficient evidence to overcome defendant's motion by demonstrating that she sustained a serious injury within the meaning of the No-Fault Insurance Law." *Gaddy v. Eyler*, 79 N.Y.2d 955, 957, 591 N.E.2d 1176 (1992).

"Although far less common than one made by a defendant, a motion for summary judgment on the issue of 'serious injury' may be granted in a plaintiff's favor in a proper case." *Deeks v. Estate of Bass*, No. 7070/05, 2007 WL 715355 at *2 (Supreme Ct., Nassau County, Mar. 9, 2007) (*Citing Horton v. Warden*, 32 AD3d 570 (3d Dept.2006); *Cook v. Garrant*, 27 AD3d 984 (3d Dept.2006); *Boorman v. Bowhers*, 27 AD3d 1058 (4th Dept.2006); and *Mustello v. Szczepanski*, 245 A.D.2d 553 (2d Dept.1997)).

### Jackson's Negligence Caused the Accident

Plaintiff seeks a ruling that the accident was caused solely by Jackson's negligence. In response, Defendants contend that "there are questions of fact as to whether Ms. Sanchez's alleged pain and problems in her lower back were actually caused by the accident at issue or whether they are the result of preexisting degenerative changes." (Affidavit of Troy Flascher, Esq. [#33-1] at 8). However, Plaintiff's motion [#27] does not ask the Court to find that Plaintiff's claimed injury was caused by the accident, but instead, it merely asks the Court to find that Jackson caused the accident. Defendants have not provided any evidence to the contrary, and during oral argument, Defendants' counsel indicated that there is no proof that Plaintiff was at fault. Accordingly, the Court will grant Plaintiff's motion for partial summary judgment [#27] regarding the cause of the accident.

### Permanent Loss of Use

Defendant seeks summary judgment as to the "permanent loss of use" category or

13

serious injury. With regard to such category, as it pertains to a lumbar spine injury, a plaintiff must demonstrate a "total loss of use of his lumbar spine," and a doctor's conclusory statement that the plaintiff is "totally disabled" is "insufficient to raise an issue of fact." *Slisz v. Miga*, 15 A.D.3d 953, 954, 789 N.Y.S.2d 775, 777 (4th Dept. 2005) (citations omitted). A mere limitation of use is insufficient. *See, Moore v. Raza*, 4 A.D.3d 843, 771 N.Y.S.2d 761, 762 (4th Dept. 2004) ("[P]laintiff failed to raise an issue of fact whether her alleged "permanent loss of use of a body organ, member, function or system" (§ 5102[d]) was total; rather, plaintiff's submissions establish only a limitation of use.") (citation omitted).

In the instant case, Plaintiff has not come forward with evidence that she sustained a total loss of use of her lumbar spine. In fact, Ameduri's affidavit implicitly indicates that Plaintiff has some residual use of her lumbar spine. (Ameduri Affidavit ¶ 7) ("My physical examinations of Ms. Sanchez reveal that she has suffered *almost* a complete loss of range of motion in her lumbar spine.") (emphasis added); *compare, Aleksiejuk v. Pell*, 300 A.D.2d 1066, 752 N.Y.S.2d 504 (4th Dept. 2002) (Denying summary judgment, noting that "Plaintiff submitted the affirmation of his treating orthopedic surgeon, who opined that, as a result of the motor vehicle accident at issue, plaintiff must undergo a laminectomy and fusions at multiple levels, and that he has a permanent loss of use of his lumbar spine."). Consequently, Defendants' motion as to the "permanent loss of use" category is granted.

### 90/180 Day Limitation

Defendants also seek summary judgment as to the category involving "a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's

usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment."  As for this category, the term "substantially all" "should be construed to mean that the person has been curtailed from performing his usual activities *to a great extent rather than some slight curtailment*." *Licari v. Elliot*, 57 N.Y.2d 230, 236, 441 N.E.2d 1088 (1982) (emphasis added).

The fact that a plaintiff returns to work during the relevant period does not necessarily defeat a claim of serious injury. *See, Vasquez v. Weiss*, 234 A.D.2d 658, 659 (3d Dept. 1996) ("While an injured party's diminished ability to perform the actual tasks comprising his or her regular employment may, in some circumstances, indicate that there has been no substantial curtailment of activity, the mere fact that plaintiff was able to return to work in some capacity is not necessarily fatal to her claim of serious injury.") (citations omitted).

As with the other categories of serious injury discussed earlier, a plaintiff must present objective evidence of injury. *Toure v. Avis Rent A Car Systems, Inc.*, 774 N.E.2d at 1204 ("[A] plaintiff must present objective evidence of a medically determined injury or impairment of a non-permanent nature[.]") (citations and internal quotation marks omitted).

In *Toure*, a plaintiff claimed to have a serious injury under the "90/180 day category," which, she testified, prevented her from exercising and performing household chores. *Id*. at 1203-1204.  For support, the plaintiff presented testimony from her chiropractor, who indicated that he detected a muscle spasm in the plaintiff's spine. *Id*. at 1204.  The chiropractor further stated that he had performed certain subjective tests, which indicated a restricted range of movement in the plaintiff's neck and back. *Id*.  Additionally, the chiropractor stated that he had reviewed MRI test results, showing disc disorder and

neuritis, and that such conditions would prevent the plaintiff from exercising and doing other activities. *Id.* The New York Court of Appeals held that such evidence was insufficient to defeat summary judgment. For example, the court stated that the chiropractor's range-of-movement testing was subjective, and that he failed to indicate "what test, if any, he performed to induce the [muscle] spasm." *Id.* at 1205. The court further stated that the testimony concerning the MRI was not sufficient objective evidence, since the chiropractor "merely mentioned an MRI report without testifying as to the findings in the report," did not introduce the MRI report into evidence, and did not "testify that the underlying MRI film supported his diagnosis of an 'L4-5 intervertebral disk disorder.'" *Id.*

In *Marks v. Brown*, 3 A.D.3d 648, 650-651, 771 N.Y.S.2d 212, 214-215 (3d Dept. 2004), the plaintiff missed one day of work, and returned to work with restrictions on her ability to sit, bend, and lift. The plaintiff also complained of trouble sleeping, and reported that it took her longer to perform household chores. *Id.* The court found that such evidence was insufficient to raise a triable issue of fact as to whether the plaintiff satisfied the 90/180 serious injury category. *Id.*, 3 A.D.3d at 65–651, 771 N.Y.S.2d at 215 ("Plaintiff . . . missed only one day of work due to the July 2000 accident, i.e., the date of the accident. Thereafter, she was able to perform her job with the minor limitations previously noted. Furthermore, plaintiff was able to perform her usual household chores though she had to spend more time to accomplish them. In summary, there was insufficient proof submitted that plaintiff's normal activities were substantially curtailed for the requisite period of time.").

In this case, Plaintiff indicates that she was unable to work for eleven days, and that when she returned to work, she had restrictions on her ability to lift, sit, and stand.

Additionally, Plaintiff states that during the relevant period she was unable to perform most household chores.  Moreover, Plaintiff has provided objective medical evidence to support these restrictions.  The Court finds that such evidence raises a triable issue of fact as to the 90/180 category, and consequently, Defendants' motion for judgment under this category is denied.

<u>Permanent Consequential Limitation/Significant Limitation</u>

Finally, Plaintiff seeks summary judgment with regard to the categories of serious injury involving a "permanent consequential limitation of use of a body organ or member" or "significant limitation of use of a body function or system," which are often analyzed together.  As to these categories, the law is clear: "For these two statutory categories, we have held that whether a limitation of use or function is 'significant' or 'consequential' (i.e., important) relates to medical significance and involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part." *Toure v. Avis Rent A Car Systems, Inc.*, 98 N.Y.2d at 353.  A significant limitation means "something more than a minor limitation of use." *Licari v. Elliot*, 57 N.Y.2d at 236, 441 N.E.2d at 1091 ("We believe that a minor, mild or slight limitation of use should be classified as insignificant within the meaning of the statute.").

In *Toure*, which involved multiple plaintiffs, one plaintiff stated that after his accident, he could lift moderate-weight objects with significant pain, had pain when bending and using his lower back, could not walk moderate distances, and had pain when turning his head. *Id.*, 774 N.E.2d at 1200-1201.  The plaintiff's doctor stated that MRI and CT-scan testing showed "bulging discs," and that upon physical examination, the plaintiff had muscle

spasms in the lumbosacral area and decreased range of motion. *Id*. at 1201. The doctor further stated that the plaintiff's limitations, such as his inability to lift, were "a natural and expected medical consequence of his injuries." *Id*. The New York Court of Appeals found that such evidence was sufficient to establish serious injury under the "permanent consequential limitation" and "significant limitation" categories. *Id*. at 1201-1202 ("We cannot say that the alleged limitations of plaintiff's back and neck are so 'minor, mild or slight' as to be considered insignificant within the meaning of Insurance Law § 5102(d).").

Similarly, another plaintiff in *Toure*, who claimed to have suffered a "permanent consequential limitation" of her spine, provided evidence that, following her accident, she had persistent pain in her lower back and neck, and that as result, she could no longer lift heavy objects, lift her children, clean her house, or shovel her driveway. *Id*., 774 N.E.2d at 1202. The plaintiff's doctor added that MRI testing showed herniated discs in the plaintiff's spine, which injury was consistent with her claimed physical limitations. *Id*. The New York Court of Appeals found that such evidence was sufficient to establish serious injury. *Id*. at 1203 ("Dr. Cambareri correlated plaintiff's herniated discs with her inability to perform certain normal, daily tasks. These limitations are not so insignificant as to bar plaintiff's recovery under the No-Fault Law.").

Here, in support of her summary judgment motion, Plaintiff has provided evidence that she is in constant pain, which restricts her ability to sit, stand, walk, and lift. Additionally, Plaintiff's doctors have provided evidence of objective testing indicating that Plaintiff's preexisting degenerative spinal disease has been seriously and permanently aggravated by the accident. Accordingly, Plaintiff has met her burden of establishing

serious injury under the "permanent consequential limitation" and "significant limitation" categories.

Defendants counter that the expert opinions offered by Hughes are sufficient to defeat summary judgment. More specifically, Defendants point to Hughes' opinion that Plaintiff suffered a "strain," and argue that a strain is insufficient to qualify as a serious injury. (*See*, Hughes Report at pp. 27-28) ("I feel that the [accident] resulted in an acute cervical and lumbosacral strain that aggravated her prior condition."). Various cases have indeed held that sprains and strains are insufficient to establish serious injury. *See, e.g., Washington v. Cross*, 48 A.D.3d 457, 849 N.Y.S.2d 784, 785 (2d Dept. 2008) ("[T]he plaintiffs sustained only sprains and/or strains, and accordingly, neither of them sustained a serious injury within the meaning of Insurance Law § 5102(d).") (citation omitted); *Harris v. Ariel Transp. Corp.*, 55 A.D.3d 323, 324, 865 N.Y.S.2d 73, 74 (1st Dept. 2008) (Defendant met initial burden on summary judgment by proof that plaintiff had "resolved cervical sprain/strain and full cervical and lumbar ranges of motion.").

On the other hand, a strain that aggravates a preexisting degenerative condition can qualify as a serious injury. *See, Ayach v. Ghazal*, 25 A.D.3d 742, 744, 808 N.Y.S.2d 759, 761 (2d Dept. 2006) (Holding that defendant failed to make a prima facie showing of entitlement to judgment as a matter of law, where defendant's medical witnesses indicated that the plaintiff suffered a cervical "strain" that "activated" and "'superimposed' on degenerative changes."). In *Ayach*, the court further noted that the defendant's medical witness "could not determine what symptoms related to the accident and what symptoms were pre-existing." *Id*.; *see also, Hawkins v. Forshee*, 245 A.D.2d 1091, 1091, 666 N.Y.S.2d

19

88 (4th Dept. 1997) (Defendant failed to meet initial burden on summary judgment, where medical evidence indicated that plaintiff suffered a spinal strain that aggravated preexisting degenerative disease)[5]; *Countermine v. Galka*, 189 A.D.2d 1043, 1045-1046, 593 N.Y.S.2d 113, 116 (3d Dept. 1993) (Jury's finding of serious injury was supported by sufficient evidence, including orthopedist's opinion "that the trauma of the accident exacerbated a preexisting degenerative disc condition to the point where it had permanently limited the function of plaintiff's spinal system, limiting his range of motion and causing pain indefinitely, which was permanent, consequential and would probably get worse.").

Here, Hughes' opinion is essentially consistent with that of Ameduri and Huckell, in that they all agree that the accident aggravated Plaintiff's degenerative disc disease. (*See*, Hughes' Report dated December 2, 2008 at p. 28). Hughes does not dispute that Plaintiff is in pain, or that her use of her spine is objectively limited, as a result of the accident. Nor does Hughes dispute that Plaintiff's spine was asymptomatic immediately prior to the accident. In that regard, Hughes' impression was that, prior to the accident, Plaintiff's last complaint of low back pain was in 1997.

Consequently, the Court determines that the evidentiary proof upon which Defendants rely does not not raise a triable issue of material fact . Accordingly, Plaintiff's

---

[5]"In support of her motion, defendant relied upon the report of a chiropractor who examined plaintiff five years after the accident. That report states that plaintiff suffered a cervical and thoracic strain and sprain causally related to the accident that aggravated symptoms of preexisting cervical and thoracic spondylosis. The chiropractor concludes that the accident left plaintiff with a "mild partial disability" and that no fundamental change in her condition can be expected. In our view, defendant's own proof, showing that plaintiff suffers from chronic neck, shoulder and back conditions that have restricted her physical activities, raises a triable question of fact as to whether she sustained a significant limitation of use of a body function or system. Further, the proof that plaintiff continued to suffer from her accident-related injuries five years after the accident and that no change in her condition was expected raises the further question whether those injuries are permanent." *Id*. (Citations omitted).

motion for partial summary judgment, seeking a ruling that she suffered a serious injury under the "permanent consequential limitation" and "significant limitation" categories contained in Insurance Law § 5102(d), is granted.

CONCLUSION

Plaintiff's motions for partial summary judgment (Docket Nos. [#27][#35]) are granted, and Defendants' motion for partial summary judgment (Docket No. [#33]) is granted in part and denied in part. By separate order the Court will schedule this matter for a pretrial conference.

SO ORDERED.

Dated:      Rochester, New York
           September 29, 2009

ENTER:


/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge